# UNITED STATES JUDICIAL PANEL
# on
# MULTIDISTRICT LITIGATION

IN RE: DARVOCET, DARVON AND PROPOXYPHENE
PRODUCTS LIABILITY LITIGATION     MDL No. 2226

## TRANSFER ORDER

**Before the Panel:** Pursuant to Panel Rule 7.1, plaintiffs in three actions listed on Schedule A move to vacate our order that conditionally transferred their actions to MDL No. 2226. Responding defendant Eli Lilly & Co. (Eli Lilly) supports the motions to the extent that they are based on the argument that each action was removed as a "mass action" under the Class Action Fairness Act of 2005 (CAFA) and, therefore, cannot be transferred by the Panel without the request of a majority of the plaintiffs in each. *See* 28 U.S.C. § 1332(d)(11)(C)(i). Eli Lilly disagrees, however, with plaintiffs' remaining arguments.

### I. Plaintiffs' Non-CAFA Arguments Against Transfer

Before we turn to the CAFA issue, we address plaintiffs' other arguments against transfer. After careful review of the record, we find it clear that these three actions share questions of fact with actions in this litigation previously transferred to the Eastern District of Kentucky, and that transfer of these actions to MDL No. 2226 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. Like many of the already-centralized actions, the actions before the Panel involve factual questions arising from allegations that Darvocet, Darvon and other medications containing propoxyphene were defectively designed and marketed and that ingestion of such medications resulted in injury. *See In re: Darvocet, Darvon and Propoxyphene Prods. Liab. Litig.*, 780 F. Supp. 2d 1379, 1380 (J.P.M.L. 2011).

Plaintiffs argue that federal jurisdiction is lacking, and that their cases involve unique issues of fact. We have often held, however, that jurisdictional issues, such as a claimed lack of diversity or absence of a federal question, do not present an impediment to transfer, as plaintiffs can present such arguments to the transferee judge. *See, e.g., In re: Prudential Ins. Co. of Am. Sales Practices Litig.*, 170 F. Supp. 2d 1346, 1347-48 (J.P.M.L. 2001). Moreover, while these actions may involve some unique issues of fact, the majority of claims are virtually identical to claims already pending in the MDL. Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer. *See, e.g., Gadolinium Contrast Dyes Prods. Liab. Litig.*, 536 F. Supp. 2d 1380, 1382 (J.P.M.L. 2008).

It is not only the jurisdiction of the federal courts that plaintiffs challenge, however, but also this Panel's authority to transfer these actions pursuant to 28 U.S.C. § 1407. Therefore, we must

FILED AND CERTIFIED
ROBERT R. CARR, CLERK
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
Date: 4/17/2013
By: Susan T. Baker
Deputy Clerk

determine whether CAFA's mass action provision presents an obstacle to transfer of these cases. We turn to that issue now.

**II.    CAFA's Mass Action Provision**

Enacted in 2005, CAFA changed the rules for diversity jurisdiction and removal, allowing most large class actions to be filed in, or removed to, federal court. Concerned that abuses in state court class action litigation (*e.g.*, essentially worthless coupon settlements, unjustified awards, and excessive counsel fees) were "undermin[ing] the national judicial system," Congress determined to expand access to the federal courts for class action litigation, explaining: "Class action lawsuits are an important and valuable part of the legal system when they permit the fair and efficient resolution of legitimate claims of numerous parties by allowing the claims to be aggregated into a single action against a defendant that has allegedly caused harm." *See* Pub. L. No. 109-2, 119 Stat. 4, Sec. 2(a)(1)-(4). Congress's emphasis on the "fair and efficient resolution" of common claims suggests that CAFA was intended also to expand access to federal multidistrict litigation for such newly-removable actions. Indeed, the statute's legislative history squarely supports that suggestion. *See, e.g.,* S. Rep. No. 109-14 at 38 (2005) (Conf. Rep.) ("If other class actions on the same subject have been (or are likely to be) filed elsewhere, the Committee intends that this consideration would strongly favor the exercise of federal jurisdiction so that the claims of all proposed classes could be handled efficiently on a coordinated basis pursuant to the federal courts' multidistrict litigation process as established by 28 U.S.C. § 1407.").

In addition to expanding access to federal courts for class actions, CAFA expanded access to the federal courts for a new category of cases called "mass actions." The statute's mass action provision authorizes removal of an action where: (1) the monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that their claims involve common questions of law or fact; (2) the aggregate amount in controversy exceeds $5 million; (3) the claims of the individual plaintiffs each exceed $75,000; and (4) minimal diversity exists. *See* 28 U.S.C. § 1332(d)(11). At the same time, however, CAFA limited the Panel's authority to transfer actions removed as "mass actions." *See* § 1332(d)(11)(C)(i) ("Any action(s) removed to Federal court pursuant to this subsection shall not thereafter be transferred to any other court pursuant to section 1407, or the rules promulgated thereunder, unless a majority of the plaintiffs in the action request transfer pursuant to section 1407.").

It is Section 1332(d)(11)(C)(i) upon which the parties before us base their objections to transfer. In each notice of removal filed in the three actions, removing defendants proffered two or three grounds for removal. The notices of removal all cite federal question jurisdiction and CAFA's mass action provision as bases for removal, and the notices in two actions cite also diversity jurisdiction. While the language of Section 1332(d)(11)(C)(i) clearly circumscribes the Panel's authority to transfer an action removed *solely* as a mass action, we are confronted with the question whether the provision applies to an action that has been removed on multiple bases, including as a mass action.

In the past, when the issue of transfer of actions removed on mass action and other grounds has come before us, we have postponed a decision on transfer pending a ruling on plaintiffs' motions to remand to state court in the involved actions, in order to permit the putative transferor courts to rule on those motions, and thus determine the ground or grounds (if any) on which removal was proper.[1] Given the possibility that those actions would be remanded to state court, which would moot the issue of Section 1407 transfer, we thought it best, at that time, not to reach the issue of the precise impact of Section 1332(d)(11)(C)(i). This scenario has arisen with increasing frequency, however, and having now had the opportunity to consider the issue fully, we find that a decision at this time is appropriate.

### III. Interpretation of 28 U.S.C. § 1332(d)(11)(C)(i)

Statutory language is ambiguous when it is susceptible of more than one reasonable interpretation. *See, e.g., Vega v. Holder*, 611 F.3d 1168, 1170 (9th Cir. 2010); *Chao v. Occupational Safety & Health Review Comm'n*, 540 F.3d 519, 524 (6th Cir. 2008). We find that to be the case in this instance, as one can reasonably read the phrase removed "pursuant to this subsection" in CAFA in at least two different ways. *See* Section 1332(d)(11)(C)(i). First, one can read the provision to restrict Section 1407 transfer of all actions removed as mass actions—regardless of whether additional grounds are cited for removal. Second, one can read the provision to restrict Section 1407 transfer of only those actions that have been removed pursuant to the mass action provision alone. Either reading is plausible, and the second even more so when one considers CAFA's central purpose—to expand access to the federal courts for class action litigation—and the understanding that such an expansion would allow more cases to benefit from centralized proceedings under Section 1407.[2]

Given the ambiguity in the statutory language, we must search beyond the boundaries of the statute to determine Congress's intent. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 896 (1984)

---

[1] *See In re: Plavix Mktg., Sales Practices & Prods. Liab. Litig. (No. II)*, MDL No. 2418, 2013 WL 565971, at *3 (J.P.M.L. Feb. 12, 2013); *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, 764 F. Supp. 2d 1338 (J.P.M.L. 2011).

[2] As noted above, Congress stated its intention to expand access to federal courts for class action litigation because: "Class action lawsuits are an important and valuable part of the legal system when they permit the fair and efficient resolution of legitimate claims of numerous parties by allowing the claims to be aggregated into a single action against a defendant that has allegedly caused harm." *See* Pub. L. No. 109-2, 119 Stat. 4, Sec. 2(a)(2). This language and CAFA's legislative history suggest that CAFA also was intended to expand access to federal multidistrict litigation. *See, e.g.,* S. Rep. No. 109-14, at 38 (2005) (Conf. Rep.) ("If other class actions on the same subject have been (or are likely to be) filed elsewhere, the Committee intends that this consideration would strongly favor the exercise of federal jurisdiction so that the claims of all proposed classes could be handled efficiently on a coordinated basis pursuant to the federal courts' multidistrict litigation process as established by 28 U.S.C. § 1407.").

("Where, as here, resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear."); *Millsaps v. Thompson*, 259 F. 3d 535, 541 (6th Cir. 2001).

As explained above, CAFA allows this newly-defined type of action—"mass actions"—to be removed to federal court. Nothing in the statute or its legislative history, however, suggests that Congress intended the mass action provision to render a case that otherwise would have been within the Panel's purview—*e.g.,* a case removed on diversity or federal question grounds—not transferrable merely because the defendant has cited the mass action provision as an additional ground in its notice of removal. Indeed, the legislative history strongly suggests that Congress did not intend such a prohibition. *See* 151 Cong. Rec. H 729 ("The Sponsors wish to make clear that this restriction on MDL transfers applies *only* to mass actions as defined in subsection 1332(d)(11); the legislation does not more broadly restrict the authority of the Judicial Panel on Multidistrict Litigation to transfer class actions removed to Federal court under this legislation.") (emphasis added).

Reading Section 1332(d)(11)(C)(i) to restrict Section 1407 transfer only of actions removed exclusively as mass actions would not effect a major change in the Panel's jurisdiction or function, as the Panel previously had no authority to transfer such actions (because, pre-CAFA, they were not removable). On the other hand, reading the provision to restrict transfer of actions properly removed on diversity or federal question grounds, in addition to the mass action ground, would result in a major change in the Panel's authority and function that is unsupported by the statute's legislative history. That history provides absolutely no explanation for the inclusion of Section 1332(d)(11)(C)(i), and we are unpersuaded that Congress intended to effect such a radical change without providing an explanation of its reasons for doing so or even acknowledging that the new statute was indeed limiting the Panel's established jurisdiction—while at the same time expanding the jurisdiction of the federal courts generally. *See Dewsnup v. Timm*, 502 U.S. 410, 419 (1992) (expressing reluctance to interpret the Bankruptcy Code as effecting "a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history"); *United Savings Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 380 (1988) (major change "would not likely have been made without specific provision in the text of the statute," and it is "most improbable that it would have been made without even any mention in the legislative history"); *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 266-27 (1979) (silence of legislative history "is most eloquent, for such reticence while contemplating an important and controversial change in existing law is unlikely"). *See also INS v. St. Cyr*, 533 U.S. 289, 298 (2001) (a repeal of habeas jurisdiction requires a clear statement of congressional intent); *Cleveland v. U.S.*, 531 U.S. 12, 13 (2000) (declining to "approve a sweeping expansion of federal criminal jurisdiction in the absence of a clear statement by Congress"); *Southern New England Tel. Co. v. Global Naps Inc.*, 624 F.3d 123, 135 (2d Cir. 2010) ("a clear statement from Congress is required before we conclude that a statute withdraws the original jurisdiction of the district courts").

Section 1407 grants the Panel authority to transfer "civil actions involving one or more common questions of fact [that] are pending in different districts," and specifically enumerates exceptions to the Panel's authority to transfer. *See* § 1407(a), (g). A reading of Section

1332(d)(11)(C)(i) that restricts the Panel from transferring actions properly removed on diversity or federal question grounds, in addition to the mass action ground, would effect a partial repeal of the authority conferred by Section 1407 without any clear indication of legislative intent to do so. *See Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 808 (1976) ("When there are statutes clearly defining the jurisdiction of the courts the force and effect of such provisions should not be disturbed by a mere implication flowing from subsequent legislation.") (quoting *Rosecrans v. U.S.*, 165 U.S. 257, 262 (1897)). *See also Hui v. Castaneda*, 559 U.S. 799, ___, 130 S.Ct. 1845, 1847-48 (2010) ("Repeals by implication are not favored and will not be presumed absent a clear and manifest legislative intent to repeal."); *Johns v. Holder*, 678 F.3d 404, 407 (6th Cir. 2012) (finding the court had jurisdiction to review a Board of Immigration Appeals decision for substantial evidence, because, as regards the relevant statute, "nothing indicates that Congress meant to divest courts of appeals of their longstanding authority to conduct substantial-evidence review").

Just as there is no clear statement by Congress of an intention to limit the Panel's authority with respect to actions that were removed on grounds in addition to CAFA's mass action provision, there also are no grounds for finding a repeal by implication. Such a finding is permissible only "when the earlier and later statutes are irreconcilable." *Colorado River*, 424 U.S. at 808 (quoting *Morton v. Mancari*, 417 U.S. 535, 550 (1974)). But Section 1407 and Section 1332(d)(11)(C)(i) are not irreconcilable. To the contrary, they readily can be reconciled by reading Section 1332(d)(11)(C)(i) as restricting Section 1407 transfer only of a mass action made removable only pursuant to CAFA—an action previously not subject to such transfer.

## IV. Conclusion

Upon review of CAFA's overall purpose and its entire legislative history, we conclude that Congress did not intend that actions removed on multiple grounds, grounds which include the mass action provision, would be restricted from Section 1407 transfer. While the provision's language arguably might be read otherwise, such an interpretation would not square with Congress's intent, and would bar transfer of (absent a request by a majority of the plaintiffs therein) cases that presumptively have been transferrable, simply because the removing defendant cited CAFA mass action as but one ground supporting federal jurisdiction.

After both consideration of all argument of counsel and substantial and thorough reflection regarding this issue, we find that Section 1332(d)(11)(C)(i) does not prohibit Section 1407 transfer of an action removed pursuant to CAFA's mass action provision so long as another ground for removal is asserted.

IT IS THEREFORE ORDERED that pursuant to 28 U.S.C. § 1407, these actions are transferred to the Eastern District of Kentucky and, with the consent of that court, assigned to the Honorable Danny C. Reeves for inclusion in the coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

_____
John G. Heyburn II
Chairman

| | |
|---|---|
| Kathryn H. Vratil | W. Royal Furgeson, Jr. |
| Paul J. Barbadoro | Marjorie O. Rendell |
| Charles R. Breyer | Lewis A. Kaplan |

**IN RE: DARVOCET, DARVON AND PROPOXYPHENE
PRODUCTS LIABILITY LITIGATION**             MDL No. 2226

## SCHEDULE A

<u>Eastern District of California</u>

Jerald Bowen, et al. v. McKesson Corporation, et al., C.A. No. 1:12-01906
Thomas Mitchell, et al. v. McKesson Corporation, et al., C.A. No. 1:12-01907
Edward Baltazar, et al. v. McKesson Corporation, et al., C.A. No. 1:12-01917